Wesley M. Griffith, SBN 286390
ALMEIDA LAW GROUP LLC
111 W. Ocean Blvd, Suite 426
Long Beach, CA 90802
Telephone: 310-896-5813
E-mail: wes@almeidalawgroup.com

Justin S. Nematzadeh*
NEMATZADEH PLLC
101 Avenue of the Americas, Suite 909
New York, NY 10013
Telephone: 646-799-6729
E-mail: jsn@nematlawyers.com

Derrick F. Moore*
Moore Law PLLC
1140 3rd St. NE, Suite 200
Washington, DC 20002
Telephone: 202-289-7963
derrick@mooreatty.com

*Pro hac vice to be filed

Counsel for Plaintiff and Proposed Class

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN GIANA, on behalf of himself and all others similarly situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF |
| vs. | **Jury Trial Demanded** |
| SHEIN DISTRIBUTION CORP.; ROADGET BUSINESS PTE., LTD. d/b/a SHEIN; SHEIN TECHNOLOGY, LLC; SHEIN US SERVICES, LLC; AND DOES 1-10 | |
| Defendants. | |

-1-

CLASS ACTION COMPLAINT

Plaintiff Alan Giana brings this class action, on behalf of himself and all others similarly situated, against Defendants Shein Distribution Corporation, Roadget Business Pte., Ltd. d/b/a Shein, Shein Technology, LLC, and Shein US Services, LLC (collectively, "Shein," "Shein Defendants," or "Defendants"). In accordance with Local Rule 8-1, Plaintiff states that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, § 1332, and § 1338.[1] Plaintiff states his allegations based on personal knowledge as to the facts pertaining to him, and based on the investigation of counsel and information and belief as to all other allegations:

## I.    INTRODUCTION

1.    This class action seeks to hold Shein—a Chinese-owned e-commerce conglomerate with annual revenue of over $30 billion—responsible for its intentional, strategic, and systematic infringement of copyrights held by American artists.

2.    While Shein touts itself as a global fashion and lifestyle e-retailer that uses on-demand manufacturing technology to offer thousands of purportedly new products every day, in reality, Shein's core business model is based on the systemic theft of intellectual property.

3.    Specifically, Shein uses sophisticated algorithmic systems or other standardized methods—including, without limitation, "artificial intelligence" or "AI," algorithm-based methods, data mining, other automated or digital tools, or other systematic methods—to scour the internet for popular works, and then Shein misappropriates, pirates, counterfeits, and/or otherwise copies without permission

---

[1] As detailed in Paragraphs 12 to 16, below, this Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Copyright Act, 17 U.S.C. §§ 501 *et seq.*, and under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968. This Court also has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act because there exists minimal diversity between Class members (as defined below) and Defendants and because the amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). The Court also has subject matter jurisdiction under 28 U.S.C. § 1338 because it involves a claim for copyright infringement.

-2-

those works to manufacture and sell products through its website and mobile applications ("apps").

4.      Shein does so without notice, attribution, or compensation to the artists.

5.      Shein's on demand "fast fashion" business model relies upon rapid mass production, generating thousands of new products per day. To churn out new items at such a fevered pitch, in many instances, identical copies of copyrighted works are transmitted directly by Shein's algorithm-based design system or other systematic methods to Shein's factories for production, with no human intermediary or compliance process to ensure that the designs are not the property of others.[2] In other instances, only minor and superficial changes are made to the copyrighted works.

6.      In all instances, the result is the same: the theft of artists' copyrighted works by Shein.

7.      Shein supplements its electronic data-mining system with online research and industrial surveillance of its retail competitors.[3] Widespread copyright infringement is baked into Shein's system.

---

[2] *See, e.g.*, John Foley, *Shein's fast fashion comes with fast-finance risks*, Reuters, March 28, 2024, available at https://www.reuters.com/breakingviews/sheins-fast-fashion-comes-with-fast-finance-risks-2024-03-28 (last visited September 10, 2025) ("At first glance, Shein looks just like an online retailer. But that's deceptive because the company really trades data. It gathers information on how consumers browse and what flicks their switches, in a feat of behavioral analysis analogous to the algorithm that powers short-video app TikTok. It then serves up that information to around 5,000 manufacturers … ."); EcommOps, *How Shein Became a $100B Brand By Leveraging Direct from China Fulfillment*, May 16, 2023, available at https://ecommops.com/how-shein-became-a-100b-brand-by-leveraging-direct-from-china-fulfillment/ (last visited September 10, 2025); KrASIA Connection, Unveiling Shein's 'secret' artificial intelligence and the complexities behind its USD 66 billion valuation, November 8, 2023, available at https://kr-asia.com/unveiling-sheins-secret-artificial-intelligence-and-the-complexities-behind-its-usd-66-billion-valuation (last visited September 10, 2025).

[3] LatePost, Decoding Shein: *The rise of China's newest retail decacorn (Part 1 of 3)*, January 25, 2021, available at https://kr-asia.com/decoding-shein-the-rise-of-chinas-newest-retail-decacorn-part-1-of-3 (last visited September 10, 2025).

CLASS ACTION COMPLAINT

8.      In recent years, as Defendants expanded their product offerings beyond fashion into electronics, home goods, and other areas, Shein's industrial copying scheme invaded those product categories as well. In some cases, Shein unlawfully infringes by copying an entire item, such as a piece of jewelry or a painting, and sells the forgery for a fraction of the price of the authentic product. In other cases, Shein steals a design and slaps it on a different product, as when Shein puts screen prints of an artist's work on inexpensive clothing.

9.      Through Shein's pervasive infringement, surveillance, and misappropriation scheme, including, without limitation, the reproduction, distribution, display, and sale of products using the infringed or misappropriated images and designs, Shein has systematically infringed and continues to infringe copyrights owned by Plaintiff and tens of thousands (if not more) of other persons similarly situated across the United States.

10.     Plaintiff Alan Giana's experience is instructive. Mr. Giana is an American artist who lives in Florida. For the past 40 years, Mr. Giana has earned a living by creating and licensing his artwork for use on book covers, magazines, board games, and CDs, among other mediums. As a professional artist, Mr. Giana registers his copyrights with the U.S. Copyright Office. Mr. Giana has never sold, licensed, and/or otherwise authorized the use of his artistic works to Shein or any Shein-related entity. Despite this, Shein continues to pirate Mr. Giana's works and sell them on the Shein website and app, hampering Mr. Giana's own sales and enriching Shein. In many instances, the pirated versions of Ms. Giana's artwork are so popular on Shein that the pieces promptly sell out.

11.     Because neither Plaintiff nor the Class members have authorized, licensed, transferred, or in any way permitted Shein to use or exploit their copyrighted works, this action seeks to hold Shein accountable for the widespread financial harm that its unlawful infringement has caused, and to enjoin Shein from continuing to infringe copyrighted works that belong to Plaintiff and Class members.

-4-

## II.    JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Copyright Act, 17 U.S.C. §§ 501 *et seq.,* and under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, which is commonly referred to as "RICO."

13.    This Court also has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act and 28 U.S.C. § 1332(d) because there exists minimal diversity between Class members (as defined below) and Defendants and because the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

14.    The Court also has subject matter jurisdiction under 28 U.S.C. § 1338 because this case involves a claim for copyright infringement.

15.    Jurisdiction and venue[4] are proper in this District under 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), 1391(b)(3), 1391(c)(2), and 18 U.S.C. § 1965.  Defendants have infringed Plaintiff's rights in this District and Class members' rights across the United States, causing economic and reputational harm to Class members in this District and across the country. Defendant Shein Distribution Corporation is the seller and payment collection entity for products and services sold by the global Shein group to customers throughout the United States, including customers in this District, and has thereby profited from its infringing activity in this District. The products sold by Defendant Shein Distribution Corporation, through websites and apps owned by Defendant Roadget Business Pte., Ltd. d/b/a Shein, and with the assistance of Defendant Shein Technology, LLC and Shein US Services, LLC, as well as their

---

[4] Mr. Giana previously filed a substantially similar class action against Defendants in the United States District Court for the Southern District of New York, *Giana v. Shein Distribution Corp.,* Case No. 24-cv-2599 ("New York Action"). The New York Action was dismissed without prejudice for lack of personal jurisdiction. At the hearing on the motion, Defendants conceded that the New York Action could be refiled in California where the majority of the Shein entities are headquartered.

agents, are directed at and intended for commercial use by persons in this District and throughout the United States.

16.    To the extent any Defendant is found not to have sufficient minimal contacts with this District under standard personal jurisdiction principles, this Court may still exercise personal jurisdiction over such Defendant pursuant to 18 U.S.C. § 1965(b) because the ends of justice require that the Court exercise personal jurisdiction over any defendant who claims not to have sufficient minimum contacts with the forum. Defendants have engaged in a multi-district conspiracy to defraud Plaintiff and consumers. The Court has personal jurisdiction over at least one of the Defendants, and to the extent that this Court finds that it cannot exercise standard personal jurisdiction over all Defendants, on information and belief, absent 18 U.S.C. § 1965(b), there would be no other district that may otherwise exercise personal jurisdiction over all Defendants.

## III.    COMPLIANCE WITH LOCAL RULE REQUIREMENTS FOR COPYRIGHT ACTIONS

17.    Pursuant to Local Rule 3-1, concurrent to the filing of this action, Plaintiff will lodge a copy of Copyright Form AO-121 with this Court and the Copyright Office.

18.    Pursuant to Local Rule 19-2, a declaration from counsel is attached as Exhibit A showing that the interests of justice will be advanced and the multiplicity of actions avoided by joining the claims of different owners of different copyrights into this single action because, among other reasons, the central theory of this case is that Shein uses standardized, systematic, and/or automated practices to mass infringe copyrights held by artists and designers across the United States. As such, it is Shein's uniform practices that form the core factual nexus of this action.

## IV.    PARTIES

19.    Plaintiff Alan Giana is over the age of 18 and is a citizen of Florida. Mr. Giana is a renowned digital artist and painter who earns a living by creating,

licensing, and selling artistic works, including in this District, whose registered works were infringed by Shein.

20.    The Shein Defendants operate through a deliberately complex and opaque corporate structure designed to obfuscate responsibility for intellectual property theft and avoid liability. Defendants use the name "Shein" to refer to a conglomeration of companies spread throughout the world, all working in concert to perpetrate their systematic infringement scheme.

21.    Based on Plaintiff's counsel's investigation to date, Plaintiff alleges the following in connection with the Shein entities, which may be collectively referred to herein as "Shein," "Shein Defendants," or "Defendants":

a.    Defendant Shein Distribution Corporation ("Shein Distribution") is a Delaware corporation with a principal address located at 777 S. Alameda Street, Suite 400, Los Angeles, California 90021. Defendant Shein Distribution is a United States operating company of a China-based global conglomerate that conducts substantial e-commerce business in California, within this District, and throughout the United States. Among other things, Defendant Shein Distribution sells products in the United States through the Shein mobile apps and websites.

b.    Defendant Roadget Business Pte., Ltd. ("Roadget") is a business entity organized under the laws of Singapore. It owns the Shein trademarks in the United States, as well as the Shein websites and mobile apps. Among other things, Defendant Roadget has responsibility for developing new products for sale in the United States, including by identifying supposed consumer trends and designing products sold in the United States.

c.    Defendant Shein Technology, LLC ("Shein Technology") is a Delaware corporation with a principal address located at 777 S.

Alameda Street, 2nd Floor, Los Angeles, California 90021. Among other things, Defendant Shein Technology identifies itself as a U.S. technology company that supports Defendant Shein Distribution Corporation's sale of Shein products in the United States.

d. Defendant Shein US Services, LLC ("Shein US Services") is a Delaware corporation with a principal address located at 777 S. Alameda St., 2nd Floor, Los Angeles, California 90021. Defendant Shein US Services, LLC identifies itself as a services provider that supports Defendant Shein Distribution's sale of Shein products in the United States.

22. This structure prevents victims from identifying the entity or entities responsible for the theft of intellectual property, thereby allowing Defendants to evade liability, while continuing their infringement scheme.

23. On information and belief, Does 1-10 are individuals and/or entities who facilitate Shein's unlawful practices described in this Complaint. The identities of Does 1-10 are not presently known to Plaintiff but will be added to the action by name, if and when their identities are discovered.

## V. SHEIN'S PERVASIVE, SYSTEMIC, AND INTENTIONAL UNAUTHORIZED USE OF COPYRIGHTED WORKS

24. A substantial component of Defendants' success can be attributed to Shein's use of a proprietary electronic monitoring system that uses algorithms and machine learning—also known as "artificial intelligence" or "AI'—to track consumer trends and to identify works, designs, and products that Shein's system predicts will be commercially successful.

25. Shein's use of an electronic monitoring system began in approximately 2017, around the time when the brand broke into the American fashion industry by

offering an assortment of trendy, low-priced clothing and accessories of dubious quality.

26.    Shein has used its monitoring system and variations and improvements upon it to produce its thousands of "new" products each day, resulting in a pattern of copyright infringement over a substantial period.

27.    Shein's target demographic includes users of social media platforms, such as TikTok and Instagram. With the constant flow of user-generated content on these sites, new fashion trends emerge daily, driven by the popularity of fashion items and creative works created by small businesses and independent designers.

28.    Creators, individuals, and businesses use social media to promote items that consist of their own designs or that incorporate their own patterns, drawings, paintings, photographs, and other creative works. As more and more user-generated content emerges, so follows demand from social media users to purchase the latest fashions.

29.    In turn, Shein's business model relies on consumer demand for large quantities of fashionable products that are constantly refreshed and that sell for lower prices than those that creators, small businesses, and independent designers typically charge for their works.

30.    This very business model helped Shein capitalize on restrictions imposed during the COVID-19 pandemic. While traditional brick-and-mortar retail stores were shuttered in many areas in the United States, Shein took advantage of its e-commerce model to expand. Shein also capitalized on its target demographic's price sensitivity by selling what are commonly referred to as "fast-fashion" or "ultra-fast-fashion" products at rock-bottom prices—in many instances well below prices typically charged by fast-fashion brick-and-mortar retailers, such as Forever 21 and H&M Group, which specialize in developing and selling products within the latest fashion trends on a faster timetable than traditional fashion retailers.

CLASS ACTION COMPLAINT

31.     Accordingly, Shein has experienced massive growth in annual revenue, from about $3 billion in 2019, to nearly $10 billion in 2020 (as the global pandemic set in), to more than $30 billion in 2023.

32.     Shein has been deliberately opaque about the algorithms that it uses to capture information about—and profit from—consumer trends. But its public statements and press and analyst coverage make clear that Shein uses its proprietary technology to ingest and process huge amounts of data regarding the trends on social media sites and other online platforms. After scraping data from non-Shein sources to identify relevant trends, Shein uses its algorithms to identify products for Shein's suppliers to manufacture. Shein then automatically sends orders for the requested products to one or more of Shein's legions of suppliers, adjusting production demands depending on the traction that the products get with Shein's customer base.[5]

33.     Shein's sophisticated, for-profit surveillance and copying system results —by design—in product listings on Shein's site that copy and infringe the designs of others, many times even after the actual designers have notified Shein that it is selling infringing works. Discovery regarding Shein's algorithm, machine-learning programs, related electronic monitoring systems, and other systematic methods will confirm that this repeated copying of the works of others is not a design flaw or an

---

[5] *See, e.g.,* Economic Times, *Clothing giant Shein in focus as France targets fast fashion*, March 22, 2024, available at https://retail.economictimes.indiatimes.com/news/apparel-fashion/apparel-clothing-giant-shein-in-focus-as-france-targets-fast-fashion/108701947 (last visited September 10, 2025) ("[I]t tracks users' search data and social media trends to generate designs that are almost guaranteed to sell -often appearing to simply copy from other brands."); Isabella Fish, *Inside Shein: Exclusive Interview with Chinese Fast Fashion Giant,* DRAPERS, November 2, 2022, available at https://www.drapersonline.com/insight/inside-shein-exclusive-interview-with-chinese-fast-fashion-giant; Kenneth P. Pucker, *The Lingering Cost of Instant Fashion*, Harvard Business Review, February 27, 2024, available at https://hbr.org/2024/02/the-lingering-cost-of-instant-fashion (last visited September 10, 2025).

unanticipated output, but it is an expected and desired feature of Shein's system. Indeed, as discussed below, Shein has already faced multiple lawsuits for infringement of copyrights and trademarks. Moreover, Shein has faced so many informal complaints on social media about its widespread infringement that users have created hashtags, including, without limitation, #sheinstolemyartwork, #sheinarttheft, #sheintheft, #sheinstolemydesign, and #sheinripoff.

34.    Though Shein's electronic monitoring system originally focused on tracking the most current and up-and-coming fashion trends, so that Shein's manufacturers could produce designs based on those trends, in recent years, the system has also been monitoring non-fashion products, like paintings and other fine art, such as that created by Plaintiff.

35.    Public reporting confirms that Shein's design and supply-chain systems are fed by data collected from Shein's surveillance and tracking of user behavior on its apps, social media pages, and website. This data is supplemented with information that Shein's electronic monitoring system and Shein's research teams pull from non-Shein social media pages, competitors' websites and apps, and the internet more broadly.

36.    For example, Shein's own privacy policy admits to tracking numerous customer specific data points, including: personally identifying information (e.g., names, email addresses, phone numbers), device and IP information, payment information, browsing data, and network and browser activity.[6] In other words, Shein can identify the specific products that its customers view on websites and apps in real time, order its suppliers to manufacture identical products, and then offer counterfeit and infringing products on the Shein website and app.

---

[6] *Shein Privacy Policy*, Effective February 11, 2025 https://m.shein.com/us/Privacy-Security-Policy-a-282.html?lang=en&cdn_rsite=cf&ref=m&rep=dir&ret=mus (last visited September 10, 2025).

37.     Shein has a history of generating exact copies of other designers' art and works, including copyrighted works owned by Plaintiff and other creators who comprise the Class. For instance, The Wall Street Journal reported that Shein has faced lawsuits for copyright or trademark infringement brought by plaintiffs across the retail spectrum, including giants like Ralph Lauren and Oakley, as well as independent fashion and jewelry designers.[7]

38.     Other apparel companies and brands spend millions on trend-forecasting firms, consultants, and other services to track up-and-coming fashion trends. While they do so, reputable companies take steps to comply with intellectual property laws, using the trends identified by these services as inspiration for their own designs, rather than copying them.

39.     Shein behaves differently. Shein eschews third-party forecasting firms and consultants and instead relies on its in-house algorithmic systems or other standardized methods—including, without limitation, AI, algorithm-based methods, data mining, other automated or digital tools, or other systematic methods—to track fashion trends. And unlike apparel companies and brands that let fashion trends inspire their own designs, Shein's systems duplicate the work of other designers, stealing those designs for Shein's use and benefit.

40.     Rather than respect designers' intellectual property rights, Shein treats the costs of litigating and settling copyright infringement claims as a necessary business expense, which it builds into its financial models.  Defendants inevitably settle claims by large companies.[8]

---

[7] Dan Strumpf, *China's Fast Fashion Giant Shein Faces Dozens of Lawsuits Alleging Design Theft*, The Wall Street Journal, July 3, 2022 ("WSJ Article"), available at https://www.wsj.com/articles/chinas-fast-fashion-giant-shein-faces-dozens-of-lawsuits-alleging-design-theft-11656840601 (last visited September 10, 2025).

[8] *See, e.g.*, Wang IP Law Group P.C., *Shein Faces $100 Million Lawsuit For Copyright Infringement*, July 20, 2022, available at https://www.thewangiplaw.com/blog/2022/07/shein-faces-100-million-lawsuit-for-

41.     But when Shein copies the work of smaller, independent designers and artists, it is highly likely that the infringement will either go unnoticed—because designers and artists may not have the resources to comb the web for infringement—or will not lead to litigation, due to the prohibitive costs of individual action. Many designers and artists only become aware of Shein's infringement because they are fortunate (or unfortunate) enough that friends, fans, or customers spot a knockoff on Shein's website or app.

42.     Moreover, because of the Shein algorithm or other system's preference for cutting-edge, fashionable trends, the independent designers who are most often the source of viral hits are most likely to have their works stolen by Shein for repackaging as Shein products.

43.     For example, one independent artist complained to Shein on multiple occasions after discovering that Shein was selling products bearing her artwork without permission. As the designer continued discussions with Shein about compensating her for the infringing products, Shein began selling different products that also bore the designer's artwork, yet again without permission. The artist identified Shein products that used her designs without permission or compensation, yet she could not hire a lawyer to pursue claims against Shein because of the likely cost to litigate to protect her rights.[9]

44.     When Shein copies works by designers or artists and then sells them at a low price, Shein significantly harms the victims of its theft. Oftentimes, the works that Shein steals from designers and artists are highly successful. This outcome is not

---

copyright-infringement/ (last visited September 10, 2025).

[9] WSJ Article; *see also Details I made, they made – designers hit back at Shein's imitation game*, Ellie Violet Bramley, The Guardian, September 2, 2023, available https://www.theguardian.com/business/2023/sep/02/details-i-made-they-made-designers-hit-back-at-sheins-imitation-game#:~:text=In%20the%20same%20month%2C%20three,'%20process%20and%20organizationa (last visited September 10, 2025).

CLASS ACTION COMPLAINT

surprising, given that Shein targets designs that are valuable enough to copy. Shein's misappropriation and sale of designers and artists' works at low prices harms the victims by stealing sales directly from them and also by stealing downstream sales of licensed products. Shein's scheme diminishes the value of the original works and licensed products and also diminishes fashion retailers' and outlet buyers' appetite to license or resell the designers and artists' works.

45.     Shein's pervasive and systematic intellectual property theft therefore exploits the hard work and talent of designers and artists, allowing Shein to reap the financial benefits of a pattern, design, drawing, painting, photograph, image, or other artwork that its algorithm-based monitoring or other system has identified as having a high potential of commercial success, leaving the original designer or artist of such a valuable work empty handed. And Shein has largely been able to get away with its scheme because these designers and artists have fewer resources to pursue legal action to vindicate their rights—if they are even aware of Shein's unlawful infringement in the first place.

46.     Defendants know precisely which works they have copied because identifying and cataloging these works is essential to their business operations. Defendants cannot claim ignorance about which designs they have taken when their entire business model depends on systematically tracking trending designs, converting them to products, and fulfilling customer orders. The same systematic tracking that enables Defendants to operate their high-volume copying scheme will enable identification of Class members whose works were infringed.

47.     Defendants' years-long use of a sophisticated system of algorithms, artificial intelligence, other electronic surveillance, and other systematic methods to copy and appropriate copyrighted works designed and owned by others confirm that Shein's serial copyright infringement is willful—and not merely a result of ignorance that Defendants' conduct constitutes copyright infringement. Defendants are and have been aware that deliberately taking the works of others and passing them off as

the works of Defendants or Defendants' suppliers results in pervasive infringement of the copyrights of others, including the Class members.

48. Defendants' copyright infringement is not sporadic, accidental, or limited to isolated instances. Rather, it constitutes a pervasive, serial, systematic, and widespread pattern of infringement that forms the core of Defendants' business model. The industrial scale of this infringement—producing thousands of new products daily through algorithmic copying—demonstrates that wholesale copyright infringement is not a bug in Shein's system, but its central feature.

49. The automated, algorithmic nature of Defendants' copying makes their infringement inherently systematic. Unlike traditional infringement that might result from individual bad actors or oversight, Shein has built and deployed sophisticated technology or other systems specifically designed to identify, copy, and commercially exploit others' creative works at massive scale. This years-long, pervasive, and serial infringement campaign has been willful, not merely the result of ignorance that their conduct constitutes copyright infringement.

50. Indeed, what little Shein has said publicly about these lawsuits confirms that Shein's widespread infringement of copyrights owned by Plaintiff and Class members is intentional. For instance, Shein has attempted to pin the blame for its pervasive copyright infringement on suppliers by insisting that Shein's suppliers must "certify their products do not infringe third-party IP."[10] Yet the suppliers generally do not create new products for Shein to sell; rather, Shein uses its surveillance systems to identify products that it then directs the suppliers to manufacture.[11]

---

[10] WSJ Article.

[11] *See, e.g.,* BenCham Shanghai, *The Enigma of SHEIN: Unraveling the Success of the Mysterious Online Retailer*, July 17, 2023, available at https://shanghai.bencham.org/news/enigma-shein-unraveling-success-mysterious-online-retailer (last visited September 10, 2025).

CLASS ACTION COMPLAINT

51.     Furthermore, unless Shein has purged data in a gambit to avoid liability, Shein must be in possession of electronically-stored information showing the following: (1) the source from which Shein's algorithm extracted each particular work at issue; (2) the time at which Shein transmitted the design for an infringing work to its suppliers for manufacture; (3) each instance when Shein sold an infringing work to a customer; (4) the customer name, order and shipping date, and order and shipping location; (5) the price at which the product was sold; and (6) the net cost paid to the supplier to manufacture the infringing work.

52.     Defendants' own business needs require them to create and maintain exactly the type of objective records that will allow Class members to be identified without individualized inquiry into the merits of each claim. Class members need only match their copyrighted work against Defendants' databases using the same image recognition and hashing technology that Defendants themselves employ.

53.     As a result, Shein, and not the suppliers, is in the best position to know —and, in fact, does know—whether a particular product that it instructed its suppliers to manufacture was created by a Shein employee or one of Shein's suppliers or instead was copied from a non-Shein website or app.

## VI.     SHEIN'S INFRINGEMENT OF PLAINTIFF'S WORKS

54.     Plaintiff Alan Giana is a renowned artist.

55.     Mr. Giana creates colorful works in a style inspired by nature and the sea.

56.     Mr. Giana has earned a living for the past 40 years creating, selling, and licensing art, including to commercial distributors.

57.     In school, Mr. Giana studied design and business management, with a bachelor's degree in graphic design management.

58.     During his long career, Mr. Giana has combined his artistic and business talents to build a reputation and commercial enterprise centered on his artwork.

59.     Mr. Giana has licensed his popular works to more than fifty companies in the United States and around the world for use in (among other products) puzzles, address labels, calendars, checks, cards, gift bags, gift boxes, tins, mugs, canvas prints, placemats, note cards, coasters, magnets, clocks, thermometers, music boxes, cross-stitch kits, and diamond painting kits.  None of these companies have licensed or otherwise authorized Shein to use Mr. Giana's works.

60.     Mr. Giana's original works have also been displayed in galleries and art shows throughout the United States.

61.     And in recognition of the broad appeal and commercial value of his works, Mr. Giana has won awards, including, without limitation, the Premier Print Award from the Printing Industry of America and the Oppenheim Toy Portfolio Best Toy Award.

62.     Mr. Giana has never sold, licensed, and/or otherwise conveyed any right in any of his works to Shein or any Shein-related entity.

63.     Like other independent artists similarly situated, Mr. Giana's artworks were not spared from Shein's modus operandi of infringement.

64.     Defendants, through their algorithmic technology or other systematic methods, copied and displayed Mr. Giana's artwork on Defendants' website without any authorization or permission, manufactured products bearing Mr. Giana's artwork, and earned profits from the sale of such infringing products.

/ / /

/ / /

/ / /

1

2

3

65.    For example, Mr. Giana created the original work "Coastal Escape," which is registered with the United States Copyright Office under Reg. No. Vau# 1-110-099:

4

5

6

7

8

9

10

11

12

13

14

15



16

17    / / /

18    / / /

19

20    / / /

21

22

23

24

25

26

27

28

-18-

66. Defendants' algorithmic technology or other systematic methods identified Coastal Escape on the web and copied it without authorization for display and sale as Shein products, including "Beach Print DIY Diamond Painting Without Frame:"



67. Mr. Giana invested time, money, and effort in creating Costal Escape, and he never licensed, sold, or otherwise transferred any right in the work to Shein or any Shein-related entity.

/ / /

/ / /

/ / /

-19-

68.     Similarly, Mr. Giana created the original work "Cape May Light," which is registered with the United States Copyright Office under Reg. No. VAu# 691-995:



/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

1    69.    Defendants' algorithmic technology or other systematic method

2  identified Cape May Light on the web and copied it without authorization for display

3  and sale on Shein products, including as "Cape May Sand Fence Lighthouse Canvas

4  Art Print 13x19 Ready To Hang MDF Wood Beach Scene Seagull Home Décor,"

5  and currently remains for sale:[12]

6



15  / / /

16  / / /

17  / / /

18  / / /

19

20

21

22

23

24

25

[12] As of September 10, 2025, available for sale online at https://us.shein.com/Cape-
May-Sand-Fence-Lighthouse-Canvas-Art-Print-13x19-Ready-To-Hang-MDF-
Wood-Beach-Scene-Seagull-Home-Decor-p-
122029306.html?src_identifier=st=2%60sc=lighthouse%20scene%60sr=0%60ps=1
&src_module=search&src_tab_page_id=page_search1755636461696&pageListTy
pe=4&imgRatio=1-1&pageListType=4

CLASS ACTION COMPLAINT

70.    The stolen product is among the top results when lighthouse-related searches are run on the Shein website:



71.    Mr. Giana invested time, money, and effort in creating Cape May Light, and he never licensed, sold, or otherwise transferred any right in the work to Shein or any Shein-related entity.

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

1

2

3

72.    Similarly, Mr. Giana created the original work "Rays of Hope III," which is registered with the United States Copyright Office under Reg. No. VAu# 1-158-537:

4

5

6

7

8

9

10

11

12

13

14

15

16

17



18    / / /

19    / / /

20

21    / / /

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

73.     Defendants' algorithmic technology or other systematic method identified Rays of Hope III on the web and copied it without authorization for display and sale on Shein products, including "1pc Stunning Faux Window Lighthouse Beach View Canvas Wall Art, Ocean Landscape Print For Living Room Bedroom Bathroom Decor, Tranquil Coastal Scene Stretched Artwork, Ready To Hang," which remains for sale on Shein:[13]



74.     Mr. Giana invested time, money, and effort in creating Rays of Hope III, and he never licensed, sold, or otherwise transferred any right in the work to Shein or any Shein-related entity.

/ / /

/ / /

/ / /

---

[13] As of September 10, 2025, available for sale online at https://us.shein.com/1pc-Stunning-Faux-Window-Lighthouse-Beach-View-Canvas-Wall-Art-Ocean-Landscape-Print-For-Living-Room-Bedroom-Bathroom-Decor-Tranquil-Coastal-Scene-Stretched-Artwork-Ready-To-Hang-p-149971478.html?src_identifier=st=2%60sc=lighthouse%20landscape%60sr=0%60ps=1&src_module=search&src_tab_page_id=page_search1755632825751&pageListType=4&imgRatio=1-1&pageListType=4

CLASS ACTION COMPLAINT

1
2
3

75.     Similarly, Mr. Giana created the original work "Winter Barn III," which is registered with the United States Copyright Office under Reg. No. VAu# 1-273-170:



4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

/ / /

19
20

/ / /

21

/ / /

22
23
24
25
26
27
28

-25-

CLASS ACTION COMPLAINT

76.    Defendants' algorithmic technology or other systematic method identified Winter Barn III on the web and copied it without authorization for display and sale on Shein products, including puzzle option J, below, which is listed "Christmas House:"



77.    Mr. Giana invested time, money, and effort in creating Winter Barn III, and he never licensed, sold, or otherwise transferred any right in the work to Shein or any Shein-related entity.

78.    Mr. Giana invested time, money, and effort in creating each of these works, and he never licensed, sold, or otherwise transferred any right in the works to Shein or any Shein-related entity.

79.    Defendants used the commercial success and reputation of Mr. Giana in the art industry for their own profitable gain and to Mr. Giana's detriment.

80.    Mr. Giana and all other artists similarly situated are victims of Defendants' unlawful scheme of mass-producing copyrighted works using its algorithmic technology or other systematic methods and then selling it at low prices.

CLASS ACTION COMPLAINT

## VII. THE SHEIN RICO COPYRIGHT CONSPIRACY.

### A. The Shein RICO Enterprise.

81. The Shein Defendants operate through a deliberately complex and opaque corporate structure designed to obfuscate responsibility for intellectual property theft and avoid liability.

82. Defendants use the name "Shein" to refer to a conglomeration of companies spread throughout the world, all working in concert to perpetuate their systematic infringement scheme, with each Shein entity playing a specific role in the enterprise, including the following, without limitation:

    a.    Shein Distribution handles U.S. sales and distribution.

    b.    Roadget owns the intellectual property and digital platforms, including the Shein website and app.

    c.    Shein Technology operates the automated, algorithmic, systemic, and/or AI-driven copying systems.

    d.    Shein US Services provides operational support in the United States, including by running the Shein website and app.

    e.    Foreign suppliers that are affiliated with Shein manufacture the infringing products at Shein's direction.

83. This structure prevents victims from identifying the entity or entities responsible for the theft of intellectual property, thereby allowing Defendants to evade liability while continuing their infringement scheme.

84. The Shein Defendants operate as an association-in-fact enterprise with the common purpose of advancing Shein's business of selling clothing and apparel while systematically misappropriating and profiting from the intellectual property of others with impunity.

85. The Shein enterprise has operated since at least 2017, and as such, Shein has sufficient longevity for its members to carry out their purposes.

86. Each of the Shein Defendants directed, conducted, and/or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity.

**B.    The Shein Racketeering Acts.**

87. The Shein Defendants, by and through the enterprise, have engaged in the racketeering act of willful copyright infringement. *See* 18 U.S.C. § 1961 ("'racketeering activity' means . . . [violation of] section 2319 (relating to criminal infringement of a copyright)").

88. The acts of copyright infringement set forth in this Complaint were willful and committed by the Shein Defendants and through their enterprise for the purposes of commercial advantage and private gain in violation of 17 U.S.C. § 506 and are punishable pursuant to 18 U.S.C. § 2319.

89. Specifically, as detailed in Paragraph 54 to 80, above, Shein has willfully infringed at least the following registered copyrighted works owned by Mr. Giana:

a.    Coastal Escape, Reg. No. VAu# 1-110-099

b.    Cape May Light, Reg. No. VAu# 691-995

c.    Rays of Hope III, Reg. No. VAu# 1-158-537

d.    Winter Barn III, Reg. No. VAu# 1-273-170

90. Mr. Giana never licensed, sold, or otherwise transferred any right in the works to Shein or any Shein-related entity.

91. Mr. Giana is not alone—Shein has misappropriated, pirated, counterfeited, and/or otherwise copied without permission the works of thousands of other artists, infringing tens of thousands of U.S.-registered copyrights.

92. Copyright infringement is not incidental for the Shein Defendants. It's central to their enterprise.

## VIII.  CLASS ACTION ALLEGATIONS

93.     Plaintiff brings this action for damages and injunctive relief as a class action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), and in the alternative, to litigate common issues regarding Defendants' serial copyright infringement and violation of RICO under Rule 23(c)(4).

94.     Specifically, Plaintiff brings this action on behalf of the following Damages Class:

> All persons and/or entities who owned a U.S.-registered copyright that was utilized by Defendants in a product(s) within the applicable statute of limitations period.

95.     The following people or entities are excluded from the Damages Class: (1) any Judge or Magistrate presiding over this action, members of their staffs (including judicial clerks), and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest, and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel, Defendants' counsel, and non-attorney employees of their firms; (6) the legal representatives, successors, and assigns of any such excluded persons; and (7) any person or entity who licensed and/or otherwise expressly transferred an interest in a copyright to Shein, as to those licensed or transferred works.

96.     The Damages Class is expressly limited to registered copyright owners.

97.     In addition, Plaintiff brings this action on behalf of the following Injunctive-Relief Class:

> All persons and/or entities who owned a copyright that was used by Defendants in a product(s) within the applicable statute of limitations period.

98.    The Damages Class and the Injunctive Relief Class are referred to jointly at the "Class."

99.    The following people or entities are excluded from the Injunctive-Relief Class: (1) any Judge or Magistrate presiding over this action, members of their staffs (including judicial clerks), and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest, and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel, Defendants' counsel, and non-attorney employees of their firms; (6) the legal representatives, successors, and assigns of any such excluded persons; and (7) any person or entity who licensed and/or otherwise expressly transferred an interest in a copyright to Shein, as to those licensed or transferred works.

100.    Defendants engage in pervasive, systematic digital copyright infringement. It is not that Defendants engage in individually focused, sporadic, and unique instances of infringing single victim's copyrighted work; instead, Defendants use algorithms, artificial intelligence, computerized mining and monitoring systems, electronic systems, machine learning, or other systematic methods to scour the internet to identify, copy, infringe, and steal victims' copyrighted works en masse. Widespread copyright infringement is baked into Shein's business model.

101.    Defendants' years-long, pervasive, serial, systematic, and widespread copyright infringement has been willful, not merely the result of ignorance of copyright infringement. They are and have been aware that deliberately copying, infringing, and stealing victims' copyrighted works and passing them off as Shein's images results in pervasive copyright infringement.

102.    **Numerosity.** While Plaintiff does not know the exact number of Class members, in part due to Defendants' efforts to conceal their business practice of serial

copyright infringement, there are likely tens of thousands, or even hundreds of thousands, of members in each of the proposed Classes throughout the United States. Defendants systematically have been stealing the copyrights of others without authorization for years. Moreover, Defendants make available thousands of articles of clothing, jewelry, and other items each day. With many millions of opportunities to infringe, and the widespread allegations of infringement against Shein, each of the proposed Classes may number in the tens of thousands (if not more). The size of the Classes and dispersion of Class members, combined with the fact that potential Class members have already reported not being able to bring their own suits to remedy Defendants' infringement, demonstrate that joinder of all Class members is impracticable.

103.   **Typicality.** Plaintiff's claims are typical of those of the Class members. Plaintiff and the Class members were all injured by the same pervasive, serial, systematic, and widespread copyright infringement by Defendants—the use of an algorithm or other systematic means to engage in widespread copying and unauthorized reproduction, distribution, or display of copyrighted works.

104.   Plaintiff's experiences were similar to those of members of the Class: Mr. Giana never licensed copyrighted works to Defendants; his works were not spared from Defendants' modus operandi of copyright infringement; and his copyrighted works were fully copied and infringed. He will fairly and adequately protect and represent the members' interests. His interests are not in conflict with their interests; instead, Mr. Giana and the Class share the same interests in putting a stop to Defendants' systematic copyright infringement and obtaining redress for harm that Defendants caused.

105.   **Adequacy.** Plaintiff will fairly and adequately protect and represent the interests of the Class members. Plaintiff's interests are not in conflict with the interests of the Class members; rather, Plaintiff and Class members share the same

interest in putting a stop to Defendants' serial, automated copyright infringement and obtaining redress for the harm that Defendants' unlawful conduct has caused.

106.   Plaintiff is represented by counsel with experience in prosecuting class actions and in pursuing and prevailing on claims for infringement of intellectual property rights.

107.   **Commonality and Predominance.** Questions of law and fact common to the Class members predominate over questions that may affect only individual Class members because Defendants infringed registered copyrights through use of algorithms, artificial intelligence, computerized mining and monitoring systems, electronic systems, machine learning, or other systematic methods, thus causing the same type of harm to each Class member and warranting an award of the statutory damages that Plaintiff seeks on behalf of himself and all Class members.

108.   Questions of law and fact common to the Class include the following, without limitation:

a.   Whether Defendants used algorithms, artificial intelligence, and/or other systematic processes to copy pictures, drawings, paintings, images, patterns, designs, and other works created by Class members;

b.   Whether Defendants' use of algorithms, artificial intelligence, and/or other systematic processes directly led to copying of the pictures, drawings, paintings, images, patterns, designs, and other works created by Class members;

c.   Whether Defendants' reproduction, display, or distribution of pictures, drawings, paintings, images, patterns, designs, and other works created by Class members violated the copyrights of Class members;

d.   Whether Defendants attempted to use any effective means to prevent copying of works created by Class members and others;

-32-

e.    Whether this Court should enjoin Defendants' conduct because it has caused and will continue to cause harm unless enjoined;

f.    The scope of any such declarative or injunctive relief, including, without limitation, whether further equitable relief is warranted to remedy Defendants' serial infringement;

g.    Whether Defendants' infringement was committed willfully, such that increased statutory damages per work infringed are appropriate; and

109.   For example, unless Shein has purged data in a gambit to avoid liability, Defendants possess information showing the following and minimizing the force of potential individual issues: (1) sources from which Shein's algorithm extracted works-at-issue; (2) the time at which Shein transmitted the design of an infringing work to its supplier for manufacture; (3) each instance when Shein sold an infringing work to a customer; (4) the customer name, order, shipping date, and location; (5) the price at which the product was sold; and (6) the net cost paid to a supplier to manufacture the infringing work. The pervasive, serial, systematic, and widespread nature of the alleged copyright infringement, Defendants' information, and a streamlined system for class members to submit their registered copyrights, their work, the infringing work, and an assertion that they did not license the work to Defendants (all demonstrated through readily available documents submitted to a claims administrator) all blunt the force of purported individual questions of fact or law.

110.   Since the Damages Class is limited to copyright owners of registered works and who did not license their works to Defendants, along with Defendants' alleged infringement having been pervasive, serial, systematic, widespread, and willful, any speculative and purported individual questions of fact or law that may revolve around substantial similarity are irrelevant here, because the alleged

copyright infringement includes flagrant copying of copyrighted art, images, and designs.

111.   Plaintiff alleges that copyrighted works are identified through Defendants' systematic methods, copied without licenses, and unlawfully used without a compliance function to take care that the images or designs are not the property of others. The Damages Class is limited to registered copyright holders who have not authorized, licensed, transferred, nor in any way permitted Defendants to use or exploit their copyrighted works.

112.   **Superiority.** Allowing this suit to proceed as a class action is superior to any other available method for fairly and efficiently adjudicating this controversy. By proceeding as a class action, this action will resolve all similar claims involving Defendants' unlawful use of a common mechanism for infringing the copyrights of all Class members, thus eliminating the possibility of repetitive litigation.

113.   In addition, a class action is the only practical means for remedying Defendants' unlawful, serial infringement of Class members' copyrights, as they have neither the time nor resources sufficient to bring their own individual lawsuits against Defendants. The Class consists of copyright owners who do not have the resources, funds, nor time to go after companies as herculean as Defendants: when Defendants copy the work of artists and designers, it is highly likely that the infringement will either go unnoticed-because members may not have the resources to comb the web for infringement-or will not lead to litigation, due to the prohibitive costs of individual actions. Because many of Shein's products sell in relatively small quantities, many Class members likely are unaware of Shein's infringement of copyrights that they own. Many members only become aware of Shein's infringement because they are fortunate (or unfortunate) enough that friends, fans, or customers spot a knockoff on Shein.

114.   And even for Class members who are aware of Shein's infringement, they are unlikely to have sufficiently large actual or statutory damages claims to

warrant paying for an attorney to bring their own claims in an individual suit. Thus, any decision preventing this case from proceeding as a class action would effectively permit Defendants to continue their widespread, harmful, and illegal infringement, safe in the knowledge that most copyright owners will be unable to seek redress for Defendants' wrongdoing.

115.   Plaintiff is aware of no significant difficulties in managing this action as a class action, rather than a series of individual lawsuits or a single lawsuit involving the joinder of thousands, tens of thousands, or even hundreds of thousands of Class members bringing their own claims.

116.   Plaintiff alleges that he and Damages Class members would be entitled to statutory damages: Damages Class members are limited to copyright owners of registered works who did not license their works to Defendants, and Defendants' alleged infringement has been pervasive, serial, systematic, widespread, and willful.

117.   Widespread copyright infringement is baked into Defendants' business model and will not cease without declarative nor injunctive relief.

118.   Because Defendants have engaged and continue to engage in a single course of conduct that has injured and continues injuring the Class as a whole, as well as its members individually, final injunctive relief is warranted against the Defendants with respect to all Class members.

119.   **Notice.** Plaintiff will determine and propose appropriate notice to Class members by working with a qualified notice expert and claims administrator and based on evidence learned in discovery from Shein's business records, among other sources.

## IX.   EFFECTS ON INTERSTATE COMMERCE

120.   During the period applicable to this lawsuit, Defendants manufactured, marketed, promoted, distributed, and sold products in an uninterrupted flow of commerce across state and national lines and throughout the United States, including by marketing products through the unauthorized use of copyrights owned by Plaintiff

and Class members, and incorporating into such products copyrights owned by Plaintiff and Class members, without obtaining any licenses, authorizations, or permission to use such copyrights.

121.   To effectuate their copyright infringement scheme, Defendants transmitted funds, contracts, invoices, and other types of business transactions or communications, in a continuous flow of commerce across state and national lines and throughout the United States, including through the use of the United States mails, as well as interstate and international telephone lines, and through interstate and international travel. Every time a customer places an order on Shein's website or mobile application, Defendants use interstate electronic communications to process the transaction. Every time Defendants transmit a stolen design to their manufacturers, they use international electronic communications. Every time they ship an infringing product to a customer, they use the U.S. mail or interstate carriers. These thousands of communications in furtherance of their fraudulent scheme constitute wire fraud and mail fraud under federal law.

122.   Defendants' infringement campaign and related activities were within the flow of and had substantial effects on domestic, import, and interstate commerce.

## X.   CAUSES OF ACTION

### A.   First Cause of Action: Copyright Infringement Under 17 U.S.C. §§ 106 and 501, *et seq.*

123.   Plaintiff incorporates by reference all preceding allegations in this Complaint.

124.   Because Plaintiff and Class members are the owners of registered copyrights in pictures, drawings, paintings, images, patterns, designs, and other works at issue in this litigation, Plaintiff and Class members hold the exclusive rights to these works under 17 U.S.C. § 106.

125.    Plaintiff and Class members have not assigned or transferred their rights to these works to Defendants, nor have they authorized Defendants to reproduce, distribute, display, or copy these works or make any derivative works from them.

126.    Defendants used algorithms, artificial intelligence, and/or other systematic means to find and copy Plaintiff and Class members' copyrighted pictures, drawings, paintings, images, patterns, designs, and other works.

127.    After copying protected works owned by Plaintiff and Class members, Defendants reproduced, distributed, and/or displayed these works to sell products on Defendants' e-commerce app/website, thereby earning profits directly by infringing the copyrights of Plaintiff and Class members, in violation of 17 U.S.C. § 501.

128.    Due to the injury caused by Defendants' willful and unlawful campaign of copyright infringement, Plaintiff and Class members are entitled to statutory damages and other remedies set forth below.

**B.    Second Cause of Action: Violation of RICO, 18 U.S.C. § 1962(c) and 1964(c)**

129.    Plaintiff incorporates by reference all preceding allegations in this Complaint.

130.    The Shein Defendants constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and § 1962(c), as they are a group of individuals and/or entities associated in fact and not a separate standalone legal entity. The enterprise consists of each of the Shein Defendants and their network of suppliers, technology providers, and other participants in their scheme.

131.    The enterprise has an existence separate and distinct from the pattern of racketeering activity in which Defendants engaged. The enterprise was formed for the legitimate purpose of selling clothing and fashion products, but Defendants have conducted the enterprise through a pattern of racketeering activity.

132.    Each of the Shein Defendants directed, conducted, and/or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity

-37-

within the meaning of 18 U.S.C. § 1962(c), consisting of multiple predicate acts, including willfully infringing, pirating, and counterfeiting copyrighted works for commercial advantage and private financial gain by systematically copying and selling products incorporating Plaintiff's and Class members' copyrighted works. *See* 17 U.S.C. § 506(a); 18 U.S.C. § 2319. Each instance of willful infringement constitutes a separate predicate act.

133.   Defendants committed at least two predicate acts of racketeering activity within a ten-year period. In fact, Defendants have committed thousands of predicate acts, as they have infringed thousands of copyrighted works and executed thousands of fraudulent transactions, if not more.

134.   The predicate acts constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) because:

    a.   The acts are related to each other as part of Defendants' overarching scheme to steal intellectual property and profit from it.

    b.   The acts have the same or similar purposes, results, participants, victims, and methods of commission.

    c.   The acts are continuous and ongoing, having occurred regularly over several years with the threat of continued criminal conduct.

135.   Defendants' violations of 18 U.S.C. § 1962(c) have directly and proximately caused injury to Plaintiff's and Class members' business and property, including the following, without limitation:

    a.   Lost sales and licensing revenue;

    b.   Diminished value of their copyrighted works;

    c.   Damage to their reputation and market position; and

    d.   Costs of enforcement and monitoring for infringement.

CLASS ACTION COMPLAINT

136.   By reason of the violations of 18 U.S.C. § 1962(c), Plaintiff and Class members are entitled to treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

**C.    Third Cause of Action: Violation of RICO, 18 U.S.C. § 1962(d) and 1964(c)**

137.   Plaintiff incorporates by reference all preceding allegations in this Complaint.

138.   Defendants have conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity.

139.   Defendants knew that they and their co-conspirators were engaging in a pattern of racketeering activity and agreed to facilitate that pattern of racketeering activity. Each Defendant agreed that a conspirator would commit at least two acts of racketeering activity.

140.   Defendants' overt acts in furtherance of the conspiracy include the following, without limitation:

   a.   Developing and deploying algorithmic and/or other systems designed to identify and copy copyrighted works;

   b.   Establishing the complex corporate structure to evade liability;

   c.   Coordinating the transmission of stolen designs to manufacturers;

   d.   Directing the manufacture of and/or directly manufacturing infringing products;

   e.   Sharing profits from the sale of infringing products; and

   f.   Concealing the true nature of their operations from victims and authorities.

141.   As a direct and proximate result of Defendants' conspiracy, Plaintiff and Class members have been injured in their business and property as described above.

CLASS ACTION COMPLAINT

142.    By reason of the violations of 18 U.S.C. § 1962(d), Plaintiff and Class members are entitled to treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

**XI.    PRAYER FOR RELIEF**

143.    WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on his behalf and on behalf of the Class by:

a.    Certifying the Classes defined herein to pursue damages under Rule 23(b)(3), to pursue injunctive relief under Rule 23(b)(2), and in the alternative, to litigate common issues regarding Defendants' serial copyright infringement under Rule 23(c)(4);

b.    Directing that reasonable notice of this action be given to the Class under Rule 23(c)(2), and appointing Plaintiff as Class representative and Plaintiff's counsel as Class Counsel;

c.    Declaring that Defendants' conduct as described herein constitutes unlawful copyright infringement under 17 U.S.C. §§ 106 and 501, *et seq.*;

d.    Entering an injunction, as provided for under 17 U.S.C. § 502, enjoining Defendants and any of their parents, subsidiaries, affiliates, employees, or agents, from using an algorithm and/or any other systematic method for reviewing or copying any pictures, drawings, paintings, images, patterns, designs, and other works, in order to design, market, sell, promote, or otherwise distribute or display any products on any of their sales apps/websites;

e.    Declaring that Defendants' infringing conduct as described herein constitutes willful copyright infringement under 17 U.S.C. § 504;

f.    Entering judgment in favor of Plaintiff and the Class against Defendants for statutory damages for each work by Plaintiff and

-40-

the Class members that Defendants infringed, including the increased statutory damages award provided for under 17 U.S.C. § 504(c)(2) due to Defendants' willful copyright infringement;

g. Awarding Plaintiff and the Class their costs of suit and expenses, including, without limitation, reasonable attorney's fees, as provided for under 17 U.S.C. § 505;

h. Entering judgment in favor of Plaintiff and the Class against Defendants for violations of RICO, 18 U.S.C. §§ 1962(c) and (d);

i. Awarding Plaintiff and the Class treble damages pursuant to 18 U.S.C. § 1964(c) for Defendants' RICO violations; and

j. Granting such further damages or other relief as is necessary to correct the widespread harm caused by Defendants' unlawful copyright infringement scheme, as this Court deems just.

Respectfully submitted,

Dated: September 11, 2025

*/s/ Wesley M. Griffith*
Wesley M. Griffith, SBN 286390
ALMEIDA LAW GROUP LLC
111 W. Ocean Blvd, Suite 426
Long Beach, CA 90802
Telephone: (310) 896-5813
E-mail: wes@almeidalawgroup.com

Justin S. Nematzadeh (*pro hac vice* to be filed)
NEMATZADEH PLLC
101 Avenue of the Americas, Suite 909
New York, NY 10013
Telephone: (646) 799-6729
E-mail: jsn@nematlawyers.com

Derrick F. Moore (*pro hac vice* to be filed)
Moore Law PLLC
1140 3rd St. NE, Suite 200
Washington, DC 20002
Phone: 202-289-7963
derrick@mooreatty.com

Counsel for Plaintiff and the Proposed Class

-41-

1

## DEMAND FOR JURY TRIAL

2        Plaintiff respectfully demands a trial by jury on behalf of himself and the

3    proposed Class on all issues so triable.

4

5    Respectfully submitted,

6    Dated: September 11, 2025        */s/ Wesley M. Griffith*
                                      Wesley M. Griffith, SBN 286390
7                                     ALMEIDA LAW GROUP LLC
                                      111 W. Ocean Blvd,  Suite 426
8                                     Long Beach, CA 90802
                                      Telephone: (310) 896-5813
9                                     E-mail: wes@almeidalawgroup.com

10                                    Justin S. Nematzadeh (*pro hac vice* to be filed)
                                      NEMATZADEH PLLC
11                                    101 Avenue of the Americas, Suite 909
                                      New York, NY 10013
12                                    Telephone: (646) 799-6729
                                      E-mail: jsn@nematlawyers.com
13
                                      Derrick F. Moore (*pro hac vice* to be filed)
14                                    Moore Law PLLC
                                      1140 3rd St. NE, Suite 200
15                                    Washington, DC 20002
                                      Phone: 202-289-7963
16                                    derrick@mooreatty.com

17                                    Counsel for Plaintiff and the Proposed Class

18

19

20

21

22

23

24

25

26

27

28

-42-